Citation Nr: 1702616 
Decision Date: 01/31/17 Archive Date: 02/09/17

DOCKET NO. 05-10 317 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for a cervical spine disability, to include as secondary to service-connected lumbosacral strain with spondylosis.

2. Entitlement to an initial disability rating in excess of 10 percent for service-connected lumbosacral strain with spondylosis. 

3. Entitlement to service connection for diabetes mellitus, to include as due to herbicide exposure.


REPRESENTATION

Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

E. F. Brandau, Associate Counsel


INTRODUCTION

The Veteran has active duty service in the United States Air Force from June 1966 to December 1970. He served in South Korea and Thailand and was awarded a National Defense Service Medal, among other commendations.

These matters come before the Board of Veterans' Appeals (Board) from July 2003, August 2006, and April 2010 rating decisions from the Department of Veterans Affairs (VA) Regional Office (RO). In October 2007 the Veteran testified before the undersigned Acting Veterans Law Judge (AVLJ) via videoconference. A transcript of the hearing has been prepared and added to the record. 

As it pertains to the spinal claims, in July 2003, the RO denied entitlement to service connection for a cervical spine disability and lumbosacral strain with spondylosis. The Veteran appealed and in January 2008, the Board remanded both issues for additional development. When the case returned to the Board in December 2009, the Board granted entitlement to service connection for a lumbosacral strain with spondylosis, and remanded the issue of entitlement to service connection for a cervical spine disability for additional development. In March 2010, the RO assigned the Veteran a 10 percent disability rating for lumbosacral strain with spondylosis, effective April 8, 2003. The Veteran appealed the assigned rating. In November 2011, the Board denied entitlement to service connection for a cervical spine disability. The Veteran appealed to the United States Court of Appeals for Veterans Claims (Court) and in a February 2013 memorandum decision, the Court vacated the Board's decision to deny entitlement to service connection for a cervical spine disability and remanded the claim back to the Board for development. Both the increased rating claim for a lumbosacral strain with spondylosis and entitlement to service connection for a cervical spine disability were remanded by the Board in May 2014 for additional development, and both claims have returned to the Board for adjudication. 

As it pertains to the Veteran's diabetes mellitus, in January 2008 the Board denied the Veteran's claim of entitlement to service connection for diabetes mellitus. The Veteran appealed this decision to Court. In March 2009 the issue was subject to a Joint Motion for Remand by the Court. In December 2009 the Board remanded the issue for further development. When the case returned to the Board it was again denied in September 2010. The Veteran appealed the decision to the Court and in January 2011 the issue was again subject to a joint Motion for Remand. The Board remanded the issue in November 2011 and again in May 2014 for further evidentiary development. It has now returned to the Board for adjudication. 


FINDINGS OF FACT

1. The probative, competent evidence is against a finding that the Veteran's cervical spondylosis is causally or etiologically related to active duty service or that it is causally related to or aggravated by the Veteran's service-connected lumbosacral strain with spondylosis. 

2. The Veteran's lumbosacral strain with spondylosis is productive of pain and limited motion but forward flexion of the thoracolumbar spine is greater than 60 degrees and a combined range of motion of the thoracolumbar spine is greater than 120 degrees during the entire appeal period. There is no evidence of muscle spasm or abnormal spinal contour. From September 4, 2009 to April 29, 2015, the limitation of motion of the lumbar spine is moderate and during the rest of the appeal period the limitation of motion is no more than mild. 

3. The Veteran was exposed to herbicides while serving on active duty at the Don Muang Royal Thai Air Base and subsequently developed diabetes mellitus.


CONCLUSIONS OF LAW

1. The criteria for service connection for cervical spondylosis have not been met. 38 U.S.C.A. §§ 1110, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.310 (2016). 

2. The criteria for an initial disability rating of 20 percent from September 4, 2009, to April 29, 2015, for lumbosacral strain with spondylosis have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002 & 2014); 38 C.F.R. § 4.71a, Diagnostic Code 5293 (2003); 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243 (2016).

3. The criteria for entitlement to service connection for diabetes mellitus have been met. 38 U.S.C.A. §§ 1101, 1110, 1116, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to Assist

VA has met all statutory and regulatory notice and duty to assist provisions. See 
38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326 (2016). The Veteran is appealing the initial rating assignment for his service-connected lumbosacral strain with spondylosis. Once service connection has been granted, the context in which the claim initially arose, the claim has been substantiated; therefore, additional VCAA notice under § 5103(a) is not required because the initial intended purpose of the notice has been fulfilled, so any defect in the notice is not prejudicial. Goodwin v. Peake, 22 Vet. App. 128 (2008); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Additionally, the Board notes that the Veteran was provided with the pertinent rating criteria in a February 2013 Statement of the Case. Therefore, no further notice as to the increased rating claim is needed. The Board notes that the Veteran was provided notice of what was needed to substantiate his cervical spine service connection claim in correspondence from August 2004, March 2006, and June 2009. The Veteran was provided notice of what was needed to substantiate his diabetes mellitus service connection claim in correspondence from February 2006.

With respect to the duty to assist, the Veteran's service treatment records, VA treatment records, VA examination reports, and lay evidence are associated with the record. The Veteran underwent VA examinations in connection with his claims in June 2006, September 2009, May 2010, and again in April 2015. The Board finds these examinations to be sufficient and adequate. The VA examiners reviewed the medical evidence and lay statements and performed examinations. 38 C.F.R. § 3.159(c)(4); Barr v Nicholson, 21 Vet. App. 303 (2007). With regard to the service connection claims, the examiner provided an etiology opinion with adequate supporting rationale. With regard to the increased rating claim, the examiner provided sufficient descriptive information as to the nature and extent of disability associated with the service connected lumbosacral strain with spondylosis such that the rating criteria may accurately be applied. As such, the Board finds the AOJ substantially complied with the remand directives with respect to the issues on appeal. See Stegall v. West, 11 Vet. App. 268 (1998).

The Veteran was also afforded a hearing before the Board. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) (2016) requires that the VLJ who chairs a hearing explain the issues and suggest the submission of evidence that may have been overlooked. Here, the AVLJ identified the issues to the Veteran, and the Veteran testified as to the events in service, treatment history and symptomatology of his spinal disabilities and diabetes mellitus. Neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor have they identified any prejudice in the conduct of the Board hearing. The hearing focused on the elements necessary to substantiate the claims, and the Veteran provided testimony relevant to those elements. As such, the Board finds that no further action pursuant to Bryant is necessary, and the Veteran is not prejudiced by a decision at this time.

There is no indication in the record that any additional evidence relevant to the issues is available and not part of the claims file. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 483 (2006); Shinseki v. Sanders/Simmons, 129 S.Ct. 1696 (2009).

The Board has thoroughly reviewed all of the evidence in the Veteran's claims file. Although an obligation to provide sufficient reasons and bases in support of an appellate decision exists, there is no need to discuss, in detail, all of the evidence submitted by the Veteran. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that the entire record must be reviewed, but each piece of evidence does not have to be discussed). The analysis in this decision focuses on the most salient and relevant evidence and on what the evidence shows or fails to show with respect to the matters decided herein. The Veteran should not assume that pieces of evidence not explicitly discussed herein have been overlooked. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (noting that the law requires only that reasons for rejecting evidence favorable to the claimant be addressed).

Cervical spine disability

Criteria

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2013) (holding that only conditions listed as chronic diseases in 38 C.F.R. § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b)). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).
 
Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

Moreover, where a veteran served continuously for 90 days or more during a period of war, or during peacetime service after December 31, 1946, and arthritis becomes manifest to a degree of 10 percent within one year from date of termination of such service, the arthritis shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309. 

Additionally, service connection may be established on a secondary basis for a disability that is shown to be proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439 (1995) (en banc) (additional disability resulting from aggravation of a nonservice-connected disorder by a service-connected disorder is also compensable under 38 C.F.R. §3.310).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).




Analysis

The Veteran essentially contends that he developed neck pain during his active service, resulting in his current cervical spine disability. Specifically, he reported that he injured his lumbar spine and sought treatment during service, and that his cervical spine pain is related to his low back pain. He reported injuring his neck while working on a ship in 1986, and that his low back pain precipitated this neck injury. 

As it pertains to a current disability, the Board notes that the Veteran has been diagnosed during the course of the appeal with cervical spine spondylosis. Accordingly, the first criterion for establishing service connection has been met. The question becomes whether this condition is related to service.

As it pertains to an in-service event or injury, the Veteran's service treatment records do not show complaints of, treatment for, or a diagnosis of, a cervical spine disability during service. At the time of the separation examination, clinical examination of the spine was determined to be normal. The service treatment records document complaints of and treatment for a low back injury but not an upper back injury. 

There is no evidence suggesting the Veteran's cervical spine disability manifested within one year after his discharge from service. The Veteran has not reported such a fact pattern. In fact, during his VA examination in April 2015, the Veteran reported that he injured his neck in 1986 while he was working on a ship, many years after separation from service. There is no indication in the record that the Veteran's cervical spine disability began prior to 1986. 

The evidence clearly establishes that a cervical spine disability was neither present in service nor within a year from discharge from service. Based on the foregoing, service connection cannot be established on a direct or presumptive basis for the Veteran's cervical spine disability. Therefore, the central issue is whether the Veteran's cervical spondylosis was caused or permanently worsened by his service-connected lumbosacral strain with spondylosis or one of his other service-connected disabilities. 

The Veteran first underwent VA examination in connection with his cervical spine disability in September 2009. At the time he reported injuring his neck in 1986, and that he had constant neck pain since then. He asserted that his neck pain was a seven or eight on a pain scale of one to ten. The Veteran reported doing manual labor since separation from service, but he indicated that he retired due to neck and back pain. During the physical examination the Veteran had tenderness in the cervical spine with a painful range of motion, but his strength and reflexes in the upper extremities were normal. The VA examiner opined that it was less likely than not that the Veteran's cervical spine disability was due to his lumbar spine disability because there was no documentation of his cervical spine injury, and noted that it was less likely than not that the Veteran's cervical spine disability was related to service since he did not complain of any cervical spine problem during service according to the service treatment records.

In April 2015 the Veteran again underwent VA examination in connection with his cervical spine claim. At the time the Veteran reported having temporary flare-ups of neck pain and having intermittent left arm numbness. The Veteran exhibited a reduced range of motion in the cervical spine but there was no evidence of tenderness or guarding. His strength and reflexes in the upper extremities were normal and there was no evidence of radiculopathy. The VA examiner opined that the Veteran's cervical spine disability less likely as not had its onset during or was caused by service, nor was it caused or aggravated by his lumbosacral strain with spondylosis. In making this determination the VA examiner noted that the Veteran had no cervical spine treatment, evaluations, or complaints during active duty service and that the first complaint of cervical spine pain was in 1991 when he saw a private physician in connection with his worker's compensation claim for his cervical spine injury in 1986. The VA examiner noted that acute pain or strain associated with specific events or activities are generally transient, self-limited, and respond to rest and medication. The VA examiner indicated that different episodes occur de novo and that they are not related to or caused by prior episodes; moreover there was no evidence that it caused degenerative disc disease of the spine. The VA examiner asserted that there was absolutely no connection between the Veteran's neck condition and active duty service, and that there was no conceivable scientific basis to attribute a cervical spine condition to a lumbar spine condition. In making this finding the VA examiner reasoned that the two portions of the spine were anatomically distant from each other and that there was no direct biomechanical effect exerted on the Veteran's lumbosacral spine by the cervical spine. Lastly, the VA examiner concluded that there was no scientific basis to attribute cause or aggravation by the lumbar spine. 

The Board finds that the report of the April 2015 VA examination is entitled to probative weight with regard to the question of the etiology of the Veteran's cervical spine disorder. The examiner had access to and reviewed the claims file. The Veteran was interviewed and his self-reported history of injury was noted. An etiology opinion was provided and supported by adequate rationale with citations to pertinent evidence of record (or the lack thereof). The April 2015 VA examination report indicates that part of the rationale for the etiology opinion provided was based on the fact that there were no complaints of, diagnosis of or treatment for a cervical spine disorder during the Veteran's active duty service or for many years after discharge. The Board finds the examiner was correct to rely on this fact pattern when forming the etiology opinion. The Veteran's own self-reported history demonstrates that he did not have problems with his cervical spine during active duty or for many years after discharge. This is not a situation where silence is in the record is impermissibly interpreted as weighing against the Veteran's claim. In this case, the Veteran affirmatively reported that his cervical spine disability began many years after his active duty service. 

The only evidence which supports the Veteran's claim is his own allegations and testimony. While the Veteran believes that his current cervical spine disability is related to service and to his lumbar spine disability, as a lay person, the Veteran has not shown that he has specialized training sufficient to render such an opinion. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). In this regard, the diagnosis and etiology of a cervical spine disability are matters not capable of lay observation, and require medical expertise to determine. Accordingly, his opinion as to the diagnosis or etiology of his cervical spine disability is not competent medical evidence. The Board finds the opinion of the VA examiner who conducted the April 2015 VA examination to be significantly more probative than the Veteran's lay assertions with regard to the etiology of the Veteran's cervical spine disorder.

Based on the foregoing, service connection for cervical spondylosis must be denied. In reaching this decision the Board has considered the doctrine of reasonable doubt but has determined that it is not applicable to this claim because the preponderance of the evidence is significantly against this claim.

Diabetes mellitus 

Criteria 

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic disease or illness manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker, 708 F.3d at 1340. Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).
 
Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson, 581 F.3d 1313; Pond, 12 Vet. App. 341. 

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert, 1 Vet. App. at 53.

Veterans who served in the Republic of Vietnam between January 9, 1962, and May 7, 1975, or along the Korean Demilitarized Zone (DMZ) between April 1, 1968, and August 31, 1971, shall be presumed to have been exposed to an herbicide agent. See 38 C.F.R. § 3.307(a) (6). M21-1, Part IV, Subpart ii, Ch.2, Sec. C, Para. 10(q) provides additional information regarding developing evidence of herbicide exposure in claims from veterans with Thailand service during the Vietnam Era and information concerning herbicide use in Thailand. A Memorandum for the Record reports that tactical herbicides, such as Agent Orange, were used at the Pranburi Military Reservation from April to September 1964, but not near any U.S. military installation or Royal Thai Air Force Base (RTAFB). Other than the 1964 tests on the Pranburi Military Reservation, tactical herbicides were not used or stored in Thailand. These materials provide that if a claimed herbicide exposure cannot be resolved based on the information contained in the memorandum, then follow-up inquiries should be sent to the Joint Services Records Research Center (JSRRC).

Furthermore, VA's Compensation & Pension Service (C&P) has issued information concerning the use of herbicides in Thailand during the Vietnam War. In a May 2010 Bulletin, C&P indicated that it has determined that there was significant use of herbicides on the fenced-in perimeters of military bases in Thailand intended to eliminate vegetation and ground cover for base security purposes. A primary source for this information was the declassified Vietnam era Department of Defense (DOD) document titled Project CHECO Southeast Asia Report: Base Defense in Thailand. Although DOD indicated that the herbicide use was commercial in nature rather than tactical (such as Agent Orange), C&P has determined that there was some evidence that herbicides of a tactical nature, or that of a "greater strength" commercial variant, were used. 

VA's Adjudication Procedures Manual indicates that if a veteran served at a RTAFB as an Air Force security policeman, security dog handler, member of the security police squadron, or otherwise served near the air base perimeter as shown by evidence of daily work duties, performance evaluation reports, or other credible evidence, then herbicide exposure may be established on a direct/facts-found basis. M21-1, Part IV, Subpart ii, 1.H.5.b.

38 U.S.C.A. § 1116(a) provides presumptive service connection on the basis of herbicide exposure in service for enumerated diseases manifested to a degree of 10 percent or more within a specified time period. 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307, 3.309(e), 3.313, 3.318 (2016). 

If a veteran was exposed to an herbicide agent during active military, naval, or air service, and develops diabetes mellitus to a compensable degree any time after such service, the disease shall be service-connected even though there is no record of such disease during service, provided that the rebuttable presumption provisions of § 3.307(d) are also satisfied. 38 C.F.R. §§ 3.307(a)(6), 3.309(e).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; see also Gilbert, 1 Vet. App. at 53. 

Analysis

The Veteran asserts that he has diabetes mellitus as a result of exposure to herbicides during active duty. As an initial matter, the record indicates that the Veteran has been diagnosed with diabetes mellitus. Therefore, the requirement for a current disability has been met.

Service personnel records confirm the Veteran was assigned to "USAFPCS OL 1604" which was stationed at Don Muang Royal Thai Air Base from April 1969 to December 1970. He was also noted to have served at the Osan Air Force Base in Korea. 

The Veteran testified that he was exposed to Agent Orange while handling mail bags in Thailand and Korea. As evidence, he submitted sketches of the defoliated fields in proximity to his duty service at the Air Force Bases in Don Muang, Bangkok, and Utapao. The Veteran also submitted photos of himself handling mail bags. Additionally, at the hearing he submitted photos showing that he worked with C-123 and C-130 airplanes that were habitually used to carry Agent Orange barrels (although the Veteran denied seeing barrels of Agent Orange on the planes). In March 2014 the Veteran prepared a declaration confirming that his duties required him to be physically close to both the aircrafts that were later acknowledged to spray Agent Orange chemicals and that he was close to the perimeters of the Air Force bases. Specifically, he reported that he was close enough to the perimeter of the Air Force base that he remembered seeing that there were a lot of bushes and weeds surrounding the perimeters. He also testified that he regularly came into contact with mail and canvas mail bags that had a distinct smell, which he thought was Agent Orange. The Board finds that the Veteran is competent to describe his observable symptoms during active duty. Layno v. Brown, 6 Vet. App. 465, 469 (1994).

The Veteran submitted a VA website on Thailand bases and Agent Orange exposure that note Air Force veterans stationed at Don Muang Royal Thai Air Force Base between February 1961 and May 1975 may have been exposed to herbicides near the air base perimeter. The Veteran's representative also noted that the CHECO report indicated the air base's perimeter lines were routinely defoliated with herbicides during the period of time of the Veteran's service.

Responses from the JSRRC via the Defense Personnel Records Information System (DPRIS) received in August 2014 and May 2015 essentially state that it was unable to verify the Veteran's exposure to herbicides in Thailand. In November 2015 the RO sent a letter to the Air Force Historical Research Agency (AFHRA) to verify the Veteran's correct unit information while serving as a mail handler at the Don Muang Air Force Base, and the following month AFHRA responded saying that the Veteran's supposed detachment, 1604, never existed, but that detachment 1600 would have serviced Don Muang Air Force Base but was located at the Bangkok International Airport. The Board notes that the Veteran's service personnel records specifically reference that he was assigned to a unit designated as "USAFPCS OL 1604. " 

There is lay evidence that the Veteran was in close contact with the perimeters of the Don Muang Air Force Base, and that he was in contact with mail and airplanes that may have contained residue from Agent Orange. The Board notes that the Veteran's service personnel records would not likely document each soldier's specific duties within their assigned units, to include trips to base perimeters and close contact with mail containing chemical residue. It is conceivable that part of the Veteran's duties handling mail from planes would entail being close to the perimeter of the airfield his unit was assigned to in Thailand. The Veteran has also submitted lay statements, drawings, and articles outlining his exposure to Agent Orange while working at the Don Muang Royal Thai Air Force Base. The record does not show this explicitly, but the documented evidence makes it at least as likely as not that he was near the base perimeters in Thailand and in contact with Agent Orange as described. He has consistently asserted that he came into contact with a substance he believed to be Agent Orange regularly as part of his duties as a mail handler. The Board finds these lay statements credible. Caluza v. Brown, 7 Vet. App. 498, 511 (1995). The evidence suggests that the Veteran was in a location which would expose him to herbicides, and upon application of the benefit of the doubt, the Board finds that he was exposed to herbicides based on the particular circumstances of his case. 

Given that diabetes mellitus is presumptively associated with exposure to herbicides agents and that the Board has found exposure to herbicides, service connection for diabetes mellitus is warranted. 38 C.F.R. § 3.309(e); Gilbert, 1 Vet. App. 49. As the Board has found exposure to herbicides based on the Veteran's service in Thailand, it will not discuss the Veteran's potential exposure to herbicides while serving in Korea. 





Lumbosacral sprain with spondylosis

Criteria

Disability ratings are determined by applying the criteria set forth in the VA Schedule of Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2016). Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating many accurately reflect the elements of disability, 38 C.F.R. § 4.2 (2016); resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3 (2016); where there is a questions as to which of two evaluations apply, assigning a higher of the two where the disability pictures more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7 (2016); and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disability upon the person's ordinary activity, 38 C.F.R. § 4.10 (2016). See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Thus, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination and endurance. The functional loss may be due to absence of part or all of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as disabled. See DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. § 4.40 (2016); see also 38 C.F.R. §§ 4.45, 4.59 (2016). Although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011).

During the pendency of this appeal, VA amended the rating schedule for evaluating disabilities of the spine on September 23, 2002, and September 26, 2003, respectively. Effective September 23, 2002, the only change in the rating schedule pertained to 38 C.F.R. § 4.71a, Diagnostic Code 5293, intervertebral disc syndrome (IVDS). While maintaining its designation under Code 5293, the rating criteria changed in September 2002 from evaluating IVDS based on mild, moderate, severe and pronounced symptomatology to evaluating IVDS based on the total duration of incapacitating episodes requiring bed rest prescribed by a physician, or based on combining separate evaluations of chronic orthopedic and neurologic manifestations along with evaluations for all other disabilities, whichever results in the higher evaluation. In September 2003, Diagnostic Code 5293 changed its designation to Diagnostic Code 5243, but the rating criteria remained largely the same. 

Effective in September 2003, the new criteria for evaluating service-connected spine disabilities other than IVDS became codified at 38 C.F.R. § 4.71a, Diagnostic Codes 5235 through 5242. All disabilities considered under Diagnostic Codes 5235 to 5242 are evaluated under common criteria outlined in the General Rating Formula for Diseases and Injuries of the Spine. 

The Board notes that consideration under the revised schedular criteria should not be undertaken before such became effective. The effective date rule contained in 38 U.S.C.A. § 5110(g) prevents the application of a later, liberalizing law to a claim prior to the effective date of the liberalizing law. For example, for any date prior to September 26, 2003, neither the RO nor the Board may apply the General Rating Formula for Diseases and Injuries of the Spine. The Board will therefore evaluate the Veteran's service-connected lumbosacral strain with spondylosis under both the former and the current schedular criteria, keeping in mind that the revised criteria may not be applied to any time period before the effective date of the change.

Analysis

A. September 23, 2002: Prior Regulation 

Former Diagnostic Code 5295, lumbosacral strain, provides a 40 percent evaluation when the disability is severe, with listing of whole spine to opposite side, positive Goldthwaite's sign, marked limitation of forward bending in standing position, loss of lateral motion with osteo-arthritic changes, or narrowing or irregularity of joint space, or some of the above with abnormal mobility on force motion. A 20 percent evaluation is assigned with muscle spasm on forward bending, loss of lateral spine motion, unilateral, in standing position. A 10 percent rating is assigned for characteristic pain on motion. 38 C.F.R. § 4.71(a), Diagnostic Code 5295. 

Because the Veteran's lumbosacral strain with spondylosis caused him to have a limited range of motion during the appeal, the Board will also consider whether an initial rating in excess of 10 percent may be warranted under former Diagnostic Code 5292, limitation of motion of the lumbar spine. Under Diagnostic Code 5292, a 40 percent rating is assigned for severe limitation of motion, a 20 percent rating for moderate limitation of motion, and a 10 percent rating for slight limitation of motion. 38 C.F.R. § 4.71(a), Diagnostic Code 5292. 

Ankylosis is stiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint. Dinsay v. Brown, 9 Vet. App. 79, 81 (1996). Ankylosis is also defined as "immobility and consolidation of a joint due to disease, injury, or surgical procedure." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 93 (30th ed. 2003). Because the Veteran's lumbar spine is not ankylosed, former Diagnostic Codes 5286 and 5289 are not for application in this case. Moreover, Diagnostic Code 5285, residuals of vertebral fracture, is not applicable because there is no indication that the Veteran has had any spinal fractures. There is nothing to suggest any spinal fracture, and the Veteran has not contended that he has a spinal fracture. 

Under the revised provisions of Diagnostic Code 5293, in effect from September 23, 2002 to September 25, 2003, intervertebral disc syndrome (preoperatively or postoperatively), can be evaluated either on the total duration of incapacitating episodes over the past 12 months or by combining under 38 C.F.R. § 4.25 separate evaluations of its chronic orthopedic and neurologic manifestations along with evaluations for all other disabilities, whichever method results in the higher rating. See 38 C.F.R. § 4.71a, Diagnostic Code 5293 (2003). For purposes of evaluations under 5293, an incapacitating episode is a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. Id. at Note (1). 

The Veteran's lumbar spine disability has been assigned a 10 percent disability rating. The Veteran contends that his functional impairment is greater than contemplated by the assigned rating and that a higher rating is warranted throughout the appeal period.

The Veteran injured his back during service and he has complained of back pain since his injury. This is also noted in a buddy statement submitted by C.W. The Veteran admitted at the Board hearing that he has not sought treatment for his lumbar spine disability outside of the VA examinations during the period on appeal, and although he has received treatment through VA, the majority of it has been for other impairments. 

In September 2009 the Veteran first underwent VA examination in connection with his claim and at the time he reported having flare-ups of lumbar spine pain that were exacerbated by walking long distances or rigorous activity. He denied having any episodes of incapacitation that required bed rest prescribed by a physician. During the physical examination the Veteran had an antalgic gait with lumbar flattening and tenderness in the lumbar spine. The Veteran had forward flexion to 80 degrees with pain at 70 degrees and extension to 20 degrees with pain at 10 degrees. His lateral flexion on both the left and right sides was to 30 degrees with pain at the end of the range of motion. Left and right lateral rotation was 0 to 30 degrees with pain at the end of the range of motion. The combined range of motion upon consideration of pain was 200 degrees. He had no additional range of motion deficits on repetition or evidence of pain or weakness with repetition. His lumbar spine x-ray was normal and showed minimal degenerative changes. He was diagnosed with lumbosacral strain and lumbosacral spondylosis. 

In April 2015 the Veteran again underwent VA examination in connection with his claim pursuant to the Board's May 2014 remand directive. At the time he reported that his back pain had worsened such that he had difficulty bending over; he indicated that he used a back brace when his back pain was bothering him, and that he had a defibrillator for a heart condition. On physical examination his forward flexion was from zero to 65 degrees and his extension was from zero to 25 degrees. His bilateral flexion and rotation were normal at zero to 30 degrees. The combined range of motion was 210 degrees. The VA examiner noted that the Veteran had pain in the range of motion testing but that it did not cause any functional loss. His testing on repetition produced no additional deficits or pain and weakness. There was no guarding or muscle spasm in the lumbar spine, and his strength and reflexes in the extremities were normal. There was no evidence of IVDS in the thoracolumbar spine. As noted, the Veteran's lumbar spine x-ray was normal and showed no evidence of a thoracic vertebral fracture with loss of 50 percent or more of height. In making her findings, the VA examiner referenced the Veteran's service treatment records and his post-service treatment records for his lumbar spine. There is limited evidence of documented treatment after this time. 

Based on the sum of the evidence during this period, the Board determines that a disability rating in excess of 10 percent is not warranted. Although the medical evidence during this period shows some complaints of difficulty bending and painful range of motion, the evidence does not demonstrate that the Veteran ever experienced muscle spasm or unilateral loss of lateral spine motion, and the Veteran has not alleged this. The Veteran had some reduced range of motion during his VA examinations, but his rotation and lateral flexion were at 30 degrees with pain. Thus an increased initial rating to 20 percent is not available under former Diagnostic Code 5295. In the same vein, the Veteran has not exhibited any of the more "severe" indicators warranting a 40 percent rating under the same code.

As it pertains to rating the Veteran's low back disability under former Diagnostic Code 5292, limitation of motion of the lumbar spine, the key question at issue is not whether such limitation exists, but whether this limitation can be characterized as "moderate" or "severe" in degree, thus warranting an increased initial rating to 20 or 40 percent respectively. The Board recognizes that the words "moderate" and "severe" are not defined in the VA Rating Schedule. As such, rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." See 38 C.F.R. § 4.6 (2016). 

The Veteran had range of motion testing during both VA examinations which documented reduced extension and flexion with pain. The Veteran's forward flexion was limited to 70 degrees with a normal range of motion of 90 degrees. The Board finds that having 7/9 of the range of motion for forward flexion does not qualify as more than "slight" in severity, warranting a 10 percent rating under former Diagnostic Code 5292. However, the Veteran's extension was limited in by pain in September 2009 to 10 degrees. The normal range of motion for extension is zero to 30 degrees. The Board finds that having only 1/3 of the normal range of motion for extension at the time of the September 2009 VA examination constitutes severe limitation of motion. When viewed together, the Board finds that slight limitation of motion for forward flexion and severe limitation of motion for extension equates to a moderate overall limitation of motion under Diagnostic Code 5292. The range of motion for extension at the time of the April 2015 VA examination was zero to 25 degrees. This limitation 25/30 is no more than slight. Flexion was to 65 degrees out of a possible 90 degrees. This is more than two thirds of the possible range of motion. The Board finds this limitation of motion is no more than slight on a three part scale. Based on the above, the Board finds that a staged rating is appropriate for the Veteran's service connected lumbosacral strain. A 20 percent rating is warranted for moderate limitation of motion of the thoracolumbar spine from the time of the September 2009 VA examination until the time of the April 2015 VA examination during which time no more than a 10 percent rating for slight limitation of motion is warranted under Diagnostic Code 5292. The Board notes that even with repetitive motion testing the Veteran had no additional limitation of motion. There is no indication in the VA examiners reports, or in any of the other lay and medical evidence included in the record during this time period, that the Veteran suffered from additional functional loss due to DeLuca factors, such that a rating higher than the 20 and 10 percent ratings are warranted under Diagnostic Code 5292. 38 C.F.R §§ 4.10, 4.40, 4.45; DeLuca, 8 Vet. App. 202. 

There is no indication that the Veteran suffered from attacks of IVDS or that he was prescribed bed rest by a physician for IVDS; he specifically denied ever being prescribed bed rest in September 2009. The examinations revealed no muscle spasms, subjective reports of burning pain radiating to the legs, and or diminution of sensation in the lower extremities. This evidence is against a finding that the Veteran had moderate IVDS with recurring attacks during this period. Given the above, a higher rating is not warranted for IVDS based on Diagnostic Code 5293 (2002 & 2003). 38 C.F.R. § 4.71a. These findings are also against the assignment of any separate ratings for neurological manifestations of the low back disability. See 38 C.F.R. § 4.71a, Diagnostic Code 5293 (2003). 

B. September 26, 2003: Current Regulations

Beginning September 26, 2003, the low back disability may be rated under the General Rating Formula for Diseases and Injuries of the Spine, 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5242. A 10 percent rating requires forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating requires forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or muscle spasm or guarding severe enough to result in abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 30 percent rating requires forward flexion of the cervical spine 15 degrees or less, or favorable ankylosis of the entire cervical spine. A 40 percent rating requires forward flexion of the thoracolumbar spine to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted if there is unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent rating is warranted if there is unfavorable ankylosis of the entire spine.

The notes applicable to the General Formula are as follows:

Note (1): Evaluate any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code.

Note (2): (See also Plate V.) For VA compensation purposes, normal forward flexion of the cervical spine is zero to 45 degrees, extension is zero to 45 degrees, left and right lateral flexion are zero to 45 degrees, and left and right lateral rotation are zero to 80 degrees. Normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, and left and right lateral rotation is zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the cervical spine is 340 degrees and of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. 

Note (3): In exceptional cases, an examiner may state that because of age, body habitus, neurologic disease, or other factors not the result of disease or injury of the spine, the range of motion of the spine in a particular individual should be considered normal for that individual, even though it does not conform to the normal range of motion stated in Note (2). Provided that the examiner supplies an explanation, the examiner's assessment that the range of motion is normal for that individual will be accepted.

 Note (4): Round each range of motion measurement to the nearest five degrees.

Note (5): For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis.

Note (6): Separately evaluate disability of the thoracolumbar and cervical spine segments, except when there is unfavorable ankylosis of both segments, which will be rated as a single disability.

38 C.F.R. § 4.71a, Diagnostic Codes 5235-5242.

IVDS is rated using the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. Evaluations range from 10 to 60 percent based on the number of incapacitating episodes (period of acute signs and symptoms due to IVDS that require bed rest prescribed by a physician and treatment by a physician). 38 C.F.R. § 4.71a, Diagnostic Code 5243. A 20 percent rating is warranted with incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months. Id. 

In considering the Veteran's treatment for his lumbar spine disability during the appeal period, mainly related to his two VA examinations, the Board determines that a disability rating in excess of 10 percent is not warranted. Treatment notes are consistent with this finding. His range of motion testing showed a slight reduction in the range of motion, but the reduction was consistent with a 10 percent disability rating. Indeed, the Veteran's forward flexion in September 2009 was zero to 80 degrees with pain at 70 degrees, and his forward flexion in April 2015 was zero to 65 degrees. He exhibited some spinal tenderness in both VA examinations with a slight antalgic gait, but in both VA examinations there was no evidence of any guarding or muscle spasms. There was no change in range of motion on repetition, and there was no increased pain or fatigue on repetition. The Board notes that the evidence does not suggest that the Veteran suffered from additional functional loss due to DeLuca factors. DeLuca, 8 Vet. App. 202. In addition, ankylosis is not shown during this period. As such, a higher rating is not warranted when considering the General Rating Formula for Diseases and Injuries of the Spine. 38 C.F.R. § 4.71a. 

There is no indication that the Veteran was prescribed bedrest by a physician for IVDS during this period. As such, a higher rating is not warranted for IVDS based on Diagnostic Code 5243. 38 C.F.R. § 4.71a. Moreover, the evidence is against a finding that the Veteran had separately ratable neurological manifestations of the low back disability. The evidence does not show radiculopathy or any other diagnosed neurological disability during this period. 

Extraschedular Rating

The Board has also considered whether referral for an extraschedular rating is warranted. Extraschedular consideration requires a three-step inquiry. See 38 C.F.R. § 3.321(b)(1)(2016); see also Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating adequately contemplates the claimant's disability picture. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. If the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, then the second inquiry is whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as governing norms. If the claimant's disability picture meets the second inquiry, then the third step is to refer the case to the Under Secretary for Benefits or the Director of Compensation Service to determine whether an extraschedular rating is warranted. 

Here, the Board finds the Veteran's disability picture is not so unusual or exceptional in nature as to render the ratings assigned inadequate. The Veteran's service-connected lumbosacral strain with spondylosis is evaluated as a musculoskeletal impairment, the criteria of which is found by the Board to specifically contemplate the level of occupational and physical impairment caused by this disability. Thun, 22 Vet. App. at 115; see also 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5242, 5292, 5295. During the period on appeal, the Veteran's lumbosacral strain with spondylosis was manifested by pain, and a limited range of motion. When comparing this disability picture with the symptoms contemplated by the Rating Schedule, the Board finds that the Veteran's experiences are contemplated by the evaluations assigned. The Board finds that the criteria for the evaluations assigned more than reasonably describes the Veteran's disability level and symptomatology during the respective periods, and therefore, the schedular evaluations are adequate, and no referral is required. See 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5242, 5292, 5295; see also VAOGCPREC 6-96; 61 Fed. Reg. 66749 (1996).

Finally, the Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case there are no additional service-connected effects that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

Total disability rating based on individual unemployability due to service-connected disability (TDIU)

The Court has held that a TDIU claim is part and parcel of an increased rating claim when raised by the record. Rice v. Shinseki, 22 Vet. App. 447 (2009). As a result, the Board has jurisdiction to consider the Veteran's possible entitlement to a TDIU when the issue is raised by assertion or reasonably indicated by the evidence and is predicated, at least in part, on the severity of the service-connected disability in question, regardless of whether the RO has expressly addressed this additional issue. See VAOPGCPREC 6-96 (Aug. 16, 1996); see also Caffrey v. Brown, 6 Vet. App. 377 (1994); Fanning v. Brown, 4 Vet. App. 225, 229 (1993); EF v. Derwinski, 1 Vet. App. 324 (1991). 

Here, the Veteran has not asserted that he is unable to work as a result of his service-connected lumbosacral strain with spondylosis, nor has the issue otherwise been raised by the record. The Board notes that this issue has a lengthy procedural history and that during that time the Veteran has not asserted that he has been unable to work due to a spinal disability. As such, the Board finds the issue of entitlement to a TDIU has not been raised.


ORDER

Entitlement to service connection for a cervical spine disability, to include as secondary to service-connected lumbosacral strain with spondylosis is denied.

Entitlement to an initial disability rating of 20 percent from September 4, 2009, to April 29, 2015, for service-connected lumbosacral strain with spondylosis, is granted subject to the laws and regulations governing monetary awards is warranted. The appeal is granted to that extent only. 

Entitlement to service connection for diabetes mellitus is granted. 




____________________________________________
G.A. WASIK
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs